UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MITSUBISHI HC CAPITAL AMERICA, INC. | )<br>)<br>) |
| Plaintiff, | )  No. 24 Civ 433<br>) |
| vs. | )<br>) |
| SULAKHAN JOHAL and JASVIR JOHAL | )<br>) |
| Defendants. | )<br>) |

## COMPLAINT

Mitsubishi HC Capital America, Inc., formally known as Hitachi Capital America Corp. ("MHCA" or "Plaintiff"), by and through its counsel, and for its Complaint against Sulakhan Johal ("S. Johal") and Jasvir Johal ("J. Johal" or together with S. Johal, the "Defendants"), states and alleges as follows:

### INTRODUCTION

1. This action stems from Defendants' default under a Personal Guaranty Agreement (the "Defaulted Guaranty"). A true and correct copy of the Defaulted Guaranty signed by Defendants is attached hereto as **Exhibit A**.

2. Since at least 2014, Plaintiff has provided financing arrangements to Defendants' non-party companies Pride Truck Sales L.P. ("Pride Truck") and Tpine Leasing Capital, L.P. ("Tpine") in the United States. Under the financing arrangements with Pride Truck, Plaintiff provided floorplan financing to Pride Truck so that Pride Truck could purchase inventory to sell in the ordinary course of its business. When complying with the terms of the applicable agreement, Pride Truck would use the proceeds of a sale to repay Plaintiff.

3. Pursuant to obligations set forth under the Defaulted Guaranty**,** Defendants each

agreed to personally guaranty Pride Truck's obligations under the floorplan financing agreement (as described herein).

4. However, following defaults by Pride Truck, Defendants have defaulted on their obligations under the Defaulted Guaranty.

5. In fact, Defendants' default under the Defaulted Guaranty is just one of multiple instances in which they failed to honor other guaranty obligations to Plaintiff related to Plaintiff's financing of their two companies.

6. Despite Plaintiff's notice to Defendants of defaults under the U.S. Financing Agreements (as defined below), Defendants have refused to honor their obligations under the Defaulted Guaranty. Defendants are personally liable for damages suffered by Plaintiff, and Defendants' refusal to comply with the Defaulted Guaranty necessitated Plaintiff's filing of this action to recover amounts owed by Defendants. Defendants' defaults under the Defaulted Guaranty have damaged Plaintiff in the approximate amount of no less than $88,800,000.00, which amount continues to accrue interest, expenses, and fees.

## THE PARTIES

7. Plaintiff MHCA is a Delaware corporation with its principal place of business in Connecticut. MHCA provides customized financing solutions to businesses to help meet their capital needs. MHCA offers vehicles, trading, structure, and commercial vehicle finance services.

8. Defendant Sulakhan Singh Johal a/k/a Sam Johal is a citizen of and domiciled in the Province of Ontario, Canada.

9. Defendant Jasvir Johal is a citizen of and domiciled in the Province of Ontario, Canada.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship and the matter in controversy exceeds $75,000 exclusive of interests and costs.

11. Additionally, Defendants contractually agreed to the personal jurisdiction of this Court. Under Section 8 of the Defaulted Guaranty, each Defendant accepted that all actions arising out of the Defaulted Guaranty may be tried by this Court. It is an accepted practice for parties to contract to establish exclusive jurisdiction. *See Onward Search, LLC v. Noble*, 3:22-cv-00369 (VAB), 2022 U.S. Dist. LEXIS 121506, at *21 (D. Conn. July 11, 2022) (citing *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006)).

12. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391, and Defendants contractually agreed that all actions arising directly or indirectly under Section 8 of the Defaulted Guaranty, further described herein, must be instituted and litigated in Connecticut federal or state court.

## FACTUAL ALLEGATIONS

### A. *Plaintiff Provided Financing to Defendants' Two Companies*

13. Through a series of agreements, Plaintiff provided financing for two companies that Defendants own.

14. Specifically, on or around November 21, 2018, Plaintiff entered into the Floorplan and Security Agreement ("Norwalk U.S. Floorplan Agreement") with Pride Truck, in which Defendants each are partners. A true and correct copy of the Norwalk U.S. Floorplan Agreement is attached hereto as **Exhibit B**.

15. On or around May 25, 2021, Plaintiff also entered into the Master Lease

Receivables Sale and Assignment Agreement ("Norwalk Master Receivables Purchase Agreement") with Tpine, another company owned by Defendants.

16. Also on or around May 25, 2021, Plaintiff entered into the Servicing and Remarketing Agreement with Tpine. The Servicing and Remarketing Agreement and Norwalk Master Receivables Purchase Agreement are by their terms a single undertaking.

17. On or around May 31, 2023, Plaintiff entered into the Second Amended and Restated Program Agreement ("Program Agreement") with Tpine. Together, the Norwalk U.S. Floorplan Agreement, Norwalk Master Receivables Purchase Agreement, and Program Agreement are referred to herein as the "U.S. Financing Agreements". Through the U.S. Financing Agreements, Plaintiff provided to Defendants' companies, Tpine and Pride Truck, financing in the U.S. for: (a) lease and contract receivables generated under commercial vehicle leases originated by Tpine, and (b) dealer floorplan (inventory financing) for Pride Truck.

18. The Defaulted Guaranty at issue relates to the Norwalk U.S. Floorplan Agreement.

    **B.**    ***The Norwalk U.S. Floorplan Agreement***

19. Under the Norwalk U.S. Floorplan Agreement, Plaintiff agreed to "extend credit to or on behalf of [Pride Truck] to purchase inventory." Ex. B at § 1.

20. The agreement also granted Plaintiff "an absolute and cross-collateralized security interest in" the "Collateral," defined as "all personal property of [Pride Truck], whether such property or [Pride Truck's] right, title or interest therein or thereto is now owned or existing or hereafter acquired or arising, and wherever located, including without limitation, any and all inventory acquired by virtue of any extensions of credit." *Id. at* § 2(a)-(b). Collateral also includes all of Pride Truck's "Accounts, Inventory, Equipment, Fixtures, other Goods, General

Intangibles (including Payment Intangibles), Chattel Paper (whether tangible or electronic), Instruments (including Promissory Notes), Insurance (and Insurance proceeds), Deposit Accounts, Investment Property and Documents and all Proceeds and Products of the foregoing." *Id.* at § 2(b).  Collateral also includes "all books and records, electronic or otherwise, which evidence or relate to the foregoing personal property, and all computers, disks, media and other devices in which such records are stored." *Id.*

21. Under this agreement, Pride Truck was also obligated to "keep all Collateral at permitted locations and keep all tangible Collateral safe and secure, in good order, repair and operating condition and insured as required by" Plaintiff.  *Id.* at § 4(c).

22. Further, under this agreement, Pride Truck was prohibited from using (except for demonstration of sale), renting, leasing, selling, transferring, consigning, licensing, encumbering or otherwise disposing of the Collateral without prior written consistent and with only certain limited exceptions.  *Id.* at § 4(d).

   **C.**  ***Defendants Agreed to Be Personal Guarantors***

23. Defendants are personal guarantors for all the U.S. Financing Agreements, including the Norwalk U.S. Floorplan Agreement.  *See generally* Ex. A.

24. On or around July 21 2014, Defendants each "severally request[ed] [Plaintiff] to extend credit to or to purchase security agreements, leases, notes, accounts and/or other obligations." *Id.* at 1.  Plaintiff and Defendants entered into the continuing Defaulted Guaranty to induce Plaintiff "to extend such credit or to make such purchase, and in consideration thereof . . . each [Defendant], as a primary obligor, irrevocably and unconditionally, jointly and severally guarantees to [Plaintiff] that [Defendants' company] will fully and promptly pay and perform all of its present and *future* obligations…." *Id.* at § 1 (emphasis added).

5

25. The Defaulted Guaranty also provides that Plaintiff and Defendants could enter in "new or additional . . . agreements relating to…said obligations" of the Defaulted Guaranty "without affecting or impairing the obligation of any Guarantor." *Id.* at § 5.

26. The Defaulted Guaranty, besides serving to "jointly and severally" and "irrevocably and unconditionally" guarantying the obligations of Pride Truck, also guarantied the payment of "all losses, costs, attorneys' fees and expenses which may be suffered by [Plaintiff] by reason of [Pride Truck's] default or default of [either Defendant]. *See* Ex. A at § 1.

27. Defendants also agreed to waive any rights to demand, setoff, counterclaim, recoupment or similar rights to reduce the amounts owed. *Id.* at § 4.

28. Moreover, Defendants waived any defenses that they may have other than actual payment and performance under the Defaulted Guaranty. *Id.* Defendants also waived any defenses of the guarantors regarding any invalidity, or unenforceability of any provision of the Program Agreement. *Id.* at §§ 1, 4.

29. With this guaranty in effect, Plaintiff engaged in further business with Defendants and, on November 21, 2018, executed the Norwalk U.S. Floorplan Agreement. On or about November 10, 2020, Defendants executed a Forbearance, Waiver and Reaffirmation Agreement and reaffirmed the Defaulted Guaranty. A true and correct copy of the Forbearance, Waiver and Reaffirmation Agreement is attached hereto as **Exhibit C**. Plaintiff relied on the Defendants' personal guaranty as a condition to enter into the Forbearance, Waiver and Reaffirmation Agreement.

D. *Defendants' Defaults and Refusal to Pay Plaintiff*

30. By or around December 21, 2023, Pride Truck was in default of the Norwalk U.S. Floorplan Agreement. Pursuant to Section 7(n) of the Norwalk U.S. Floorplan Agreement,

a Default (as defined therein) occurs if MHCA in good faith believes the prospect of payment of any Obligations (as defined therein) is impaired or it deems itself insecure.  MHCA was notified by Pride Truck on December 21, 2023, that certain Collateral (as defined therein) was also sold or assigned to another third-party purchaser or lender, and therefore, an Event of Default under Section 7(n) of the Norwalk U.S. Floorplan Agreement occurred.

31. Thus, Defendants were obligated to pay Plaintiff and make them whole pursuant to the Defaulted Guaranty.

32. However, Defendants have refused to fulfill their obligations.

33. On December 21, 2023, Plaintiff issued a Notice of Defaults and Reservation of Rights ("Notice of Default") to Defendants and their non-party companies that the default under the Agreement was continuing and remain uncured.  A true and correct copy of the Notice of Default is attached hereto as **Exhibit D**.

34. To date, neither Defendants nor Defendants' companies, have cured the defaults under the Norwalk U.S. Floorplan Agreement and, thus, remain in breach under the Norwalk U.S. Floorplan Agreement and the Defaulted Guaranty.

35. As of March 25, 2024, the amount due and owing, not including attorneys' fees and costs or appraisal costs, under the express terms of the Norwalk U.S. Floorplan Agreement is $88,920,679.27.  The damages include the following interest, which continues to accrue and remain subject to further revision by Plaintiff as the full scope of the damages caused by Pride Truck and Defendants crystalizes.

## COUNT I
**(Breach of Guaranty)**

36. Plaintiff repeats and realleges the allegations in paragraphs 1 through 35 as if fully set forth herein.

37.     Under the Defaulted Guaranty, Plaintiff is entitled to contractual money damages from Defendants as provided therein, both for the amounts due and owing under the Norwalk U.S. Floorplan Agreement and for any damage inflicted upon the Collateral, as well as any and all additional damages specified as a remedy after default.

38.     The Defaulted Guaranty provides that Plaintiff shall recover its attorneys' fees, costs of collection, and interest on all unpaid amounts due and owing.

39.     Notwithstanding their contractual obligations set forth in the Defaulted Guaranty and demand made by Plaintiff, each Defendant has failed to fulfill his obligations thereunder.

40.     Defendants' failure and refusal to satisfy Pride Truck's payment obligations to Plaintiff are clear and unambiguous breaches of the Defaulted Guaranty.

41.     As a direct and proximate result, Plaintiff has incurred and continues to incur substantial damages in an amount not less than $88,920,679.27, plus attorney's fees, costs, accruing interest, and costs of suit.  Plaintiff has performed any and all conditions and obligations required of it under the Norwalk U.S. Floorplan Agreement.

WHEREFORE, Plaintiff MHCA respectfully prays that judgment be entered in its favor and against Defendants Sulakhan Johal and Jasvir Johal in the amount no less than $88,920,679.27, plus all past, current and further accruing interest, default interest, attorneys' fees, and costs, and for other and further relief that the Court deems just, equitable, and proper under the circumstances.

Dated: March 25, 2024

                                            Respectfully submitted,

                                            REED SMITH LLP

                                            By: */s/ Richard J. Tannenbaum*
                                            Richard J. Tannenbaum

                                            599 Lexington Avenue
                                            New York, NY
                                            Tel: (212) 549-0299
                                            Email: rtannenbaum@reedsmith.com

                                            *Counsel for Plaintiff Mitsubishi HC Capital America, Inc.*